IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF MISSISSIPPI

IN RE: KEVIN HUDSON KEMP  CHAPTER 12
Debtor  CASE NO. 20-00655-NPO

## SECOND AMENDED CHAPTER 12 PLAN OF REORGANIZATION

COMES NOW the Debtor, Kevin Hudson Kemp (the "Debtor"), and submits this his Second Amended Chapter 12 Plan of Reorganization (the "Plan") for consideration of the Court and the creditors herein:

### DEFINITIONS

1. "Debtor" shall mean Kevin Hudson Kemp.

2. "Cat Financial" shall mean Caterpillar Financial Service Corporation.

3. "Chase Auto" shall mean JPMorgan Chase Bank, N.A.

4. "Chrysler" shall mean Santander Consumer USA, Inc. d/b/a Chrysler Capital.

5. "CNH" shall mean CNH Industrial Capital America, LLC.

6. "Community Bank" shall mean Community Bank.

7. "Ford" shall mean Ford Motor Credit Company, LLC.

8. "Honda" shall mean American Honda Finance Corporation.

9. "John Deere" shall mean John Deere Financial, F.S.B. and Deere & Company.

10. "Kubota" shall mean Kubota Credit Corporation.

11. "Trustmark" shall mean Trustmark National Bank.

12. "Wells Fargo" shall mean Wells Fargo Bank, N.A.

13. "Unsecured Creditors" shall mean all creditors of the Debtor who hold claims for unsecured debts, liabilities, or demands.

14. "Plan" shall mean this First Amended Plan of Reorganization as set forth herein.

15. "Court" shall mean the United States Bankruptcy Court for the Southern District of Mississippi, and the United States Bankruptcy Judge presiding in the Chapter 12 case of the Debtor.

16. "Effective Date of Confirmation" shall mean sixty (60) days after the date upon which the Order confirming this Plan shall become final and non-appealable.

## **CLASSIFICATION OF CLAIMS**

1. Class 1 claims shall be all expenses of administration of the Debtor as defined by § 507(a)(1) for which application for allowance is filed prior to the Effective Date of Confirmation, or such date or dates as the Court determines, as the same are allowed, approved, and ordered to be paid by the Court. Any claim filed by a creditor as an administrative claim entitled to priority under § 507(a)(1) shall be treated as an unsecured claim without priority until the Court allows the claim as being entitled to priority under § 507(a)(1).

2. Class 2 shall be the priority claims, if any.

3. Class 3.1 shall consist of the secured claims of Cat Financial secured by a Caterpillar 320 Trackhoe.

4. Class 3.2 shall consist of the secured claims of Cat Financial secured by a Caterpillar 550G Bulldozer.

5. Class 4 shall consist of the secured claims of Chase Auto secured by a 2015 GMC Yukon.

6. Class 5 shall consist of the secured claims of Chrysler secured by a 2014 Dodge Ram 2500.

7. Class 6 shall consist of the secured claims of CNH secured by a 280 Case IH Magnum Tractor, a 3330 Patriot Sprayer, a 7230 Combine, an 8-Row Corn Header, a 30' Grain Header, and an E2 Trail Header Trailer.

8. Class 7.1 shall consist of the secured claims of Community Bank secured by a house and 0.9 acres located on Robinson Road in Carthage, MS.

9. Class 7.2 shall consist of the secured claims of Community Bank secured by 200 acres and a shop located at 1640 Hopoca Road in Carthage, MS.

10. Class 7.3 shall consist of the secured claims of Community Bank secured by a Kuhn SR108 Hay Rake, a Krone 3235 Mower, an E-Z Trail Model 550 Grain Cart, a John Deere 468 Hay Baler, a 9970 John Deere Cotton Picker, a 9960 John Deere Cotton Picker, a New Holland T4.75 Pwerstar with 655 TL Loader, a Krone KW552T Hay Fluffer, a Wilch 1403 Soil Preparation, an AMCO F88-5A Hipper, an Athens Model 1165627651 Disk Harrow 22', a John Deere HX Rotary/Flail Cutter, a Bell 40' Sprayer, and a Case 8-Row 1H 1200 Planters.

11. Class 8 shall consist of the secured claims of Ford secured by a 2017 Ford F150.

12. Class 9.1 shall consist of the secured claims of Honda secured by a 2016 Honda Rancher 4x4.

13. Class 9.2 shall consist of the secured claims of Honda secured by a 2016 Honda Foreman.

14. Class 10.1 shall consist of the secured claims of John Deere secured by a John Deere Vertical Till Disk.

15. Class 10.2 shall consist of the secured claims of John Deere secured by a John Deere 6150 Tractor.

16. Class 11 shall consist of the secured claims of Kubota secured by a Lewis Decaker.

17. Class 12.1 shall consist of the secured claims of Trustmark secured by a 2007 Ford F350, a 18' BBI Litter Spreader, and a Hopper Bottom.

18. Class 12.2 shall consist of the secured claims of Trustmark secured by 29 head of cattle and a John Deere 6430 Tractor.

19. Class 13 shall consist of the secured claims of Wells Fargo secured by the Debtor's home and 2.9 acres located at 1640 Hopoca Road in Carthage, MS.

20. Class 14 shall consist of all unsecured claims.

## PAYMENT TO CHAPTER 12 TRUSTEE AND DEBTOR'S ATTORNEY

Keeping in mind the opinion Judge Woodard rendered in the *George Speir* case with respect to compensation of the Chapter 12 Trustee, and keeping in mind that Plan success can sometimes depend upon the amount of payment to the Chapter 12 Trustee and the Debtor's professionals, the Debtor previously proposed to pay Trustee compensation on the claims in Classes 7.1, 7.2 and 7.3, the only impaired classes.

However, subsequent to the filing of the original and First Amended Plan, and the failed confirmation hearing, the Debtor and the Trustee have reached an agreement with respect to the Trustee's compensation which is as follows: the Debtor will pay $15,000 as Trustee compensation for the first year of the Plan which is due at the time the Court confirms the Second Amended Plan. The Trustee's compensation will be $12,500 in year two and $15,000 in year three. The Trustee will determine what creditors need to be paid through the Plan so that the Trustee will be entitled to these amounts each year.

The Debtor shall pay the allowed fees and expenses of his attorneys, as determined by the Court and authorized in conjunction with Class 1 of the Plan.

## DESCRIPTION OF THE PLAN AND FUNDING OF THE PLAN

The funding of the Debtor's obligations, under this Plan, and under the treatment proposed by the Debtor to the secured creditors, shall be from the Debtor's farming operations.

## LIQUIDATION ANALYSIS

The Debtor is of the opinion that the liquidation of his homestead would not produce any benefit for unsecured creditors because any equity in it would not be over and above the Debtor's $75,000 homestead exemption, when combined with the first mortgage to Wells Fargo, without even considering the one-half interest that Debtor's spouse has in the home.

With respect to the Debtor's farm equipment, the Debtor points out that used farm equipment is at an unprecedented low due to many factors, most of which are beyond the Debtor's (or any purchasers of equipment) control including but not limited to, the situation involving the tariffs on American farm goods, an excess of used farm equipment on the market due to droughts in some areas and floods in others, lack of laborers in the industry, in general, and, specifically, with respect to meat packing plants, and the packing and shipping of fruit and vegetable commodities. Auctions have produced shockingly low values for farm equipment across the South in recent auctions. Accordingly, Debtor does not believe that his farm and farm-related equipment would yield more than one-half of the value ascribed to it by the Debtor in his Schedules if it were liquidated, especially at this time of year.

Subsequent to the filing of the prior plans in this case, used farm equipment prices have at least stabilized, if not improved slightly. However, due to the age of the Debtor's equipment, and after another year's use of it, the stabilization or slight increase in used farm equipment prices is at least offset by the year's use of the equipment so the liquidation analysis remains the same despite the stabilization (and perhaps slight increase) of used farm equipment prices.

## TREATMENT OF CLAIMS

Class 1. All Class 1 claims will be paid in full on the Effective Date of Confirmation, as authorized and approved by the Court. However, Debtor's cash flow, the need to pay secured

creditors, repay the Debtor's production loan and make payments to the Chapter 12 Trustee for his compensation mean there will be insufficient funds to make all of those payments, retain funds for the "carry over" period of time between 2020/2021 crop harvesting and harvest proceeds and spring planting, so Debtor's counsel has agreed to spread his fees out and they will not be paid in full in cash on the Effective Date of Confirmation.

Class 2.  The Class 2 priority claims, if any, shall be paid within sixty (60) months from the date of the order confirming the Chapter 12 Plan, with interest at the applicable statutory rate for governmental entities.

Class 3.1.  Class 3.1 claims consist of the secured claims of Cat Financial that are secured by a Caterpillar 320 Trackhoe. Subsequent to the filing of the original Plan of Reorganization, the Debtor and Cat Financial negotiated certain terms and conditions with respect to treatment of the Cat Financial claims. A copy of this Agreed Order **[DK #174]** is attached, incorporated by reference and marked as **Exhibit "A"**. The Agreed Order does not change the treatment of Cat Financial except with respect to values of the collateral and those values are amended here to be consistent with the agreement of the parties set forth in Exhibit "A".

In order to pay the secured claims of Cat Financial, the Debtor will base the "revised" principal amount of the indebtedness secured by the Caterpillar 320 Trackhoe to $55,000 - the value the Debtor believes the collateral is worth at the present time. Consistent with the terms of Exhibit "A," the Debtor has paid Cat Financial the sum of $14,000 in order to reflect what would have been the December 1, 2020, payment, with a concomitant reduction of the "new" principal amount (which is $55,000). The payment of the remaining balance (now $43,500) will be determined by the amortization of that remaining balance over a five-year term, with the first payment being due February 1, 2022, and all remaining payments due on the following February 1st of each succeeding

year of the five-year amortization period. The interest rate upon this new loan will be the existing contract rate. The loan is not impaired because it is a new, unimpaired loan under these new terms which will be complied with throughout the life of the Plan and beyond. The lien of Cat Financial upon the 320 Trackhoe shall remain unaltered. This class is unimpaired.

Class 3.2. Class 3.2 claims consist of the secured claims of Cat Financial secured by a Caterpillar 550G Bulldozer.

In order to pay the secured claims of Cat Financial, the Debtor will based the "revised" principal amount of the indebtedness secured by the Caterpillar 550G Bulldozer to $40,000 - the value the Debtor believes the collateral is worth at the present time. Consistent with the terms of the Agreed Order **[DK #271]**, a copy of which is attached, incorporated by reference and marked as **Exhibit "B"**, the Debtor has paid Cat Financial the sum of $10,000 for adequate protection, with a concomitant reduction of the "new" principal amount (which is $40,000). The payment of the remaining balance (now $30,000) will be determined by the amortization of the remaining balance over a five-year term, with the first payment being due February 1, 2022, and all remaining payments due on the following February 1st of each succeeding year of the five-year amortization period. The interest rate upon this new loan will be the existing contract rate. The loan is not impaired because it is a new, unimpaired loan under these new terms which will be complied with throughout the life of the Plan and beyond. The lien of Cat Financial upon the 550G Bulldozer shall remain unaltered. This class is unimpaired.

Class 4. Class 4 claims consist of the secured claims of Chase Auto secured by a 2015 GMC Yukon. The Debtor will continue to make the normal monthly installments (per Agreed Order **[DK #211]**) in order to pay this secured claim until such time as it is paid in full. Debtor has

consistently paid, he asserts, most of the monthly payments due to Chase Auto after the Petition was filed through payments made by Debtor's spouse. Chase Auto is examining its records to determine the amount of those payments. To the extent this class needs to be amended to reflect payments that may need to be added to the end of the loan, the parties have reserved the right to do so. This class is unimpaired.

Class 5. Class 5 claims consist of the secured claims of Chrysler secured by a 2014 Dodge Ram 2500. The Debtor will continue to make the normal monthly installments in order to pay this secured claim until such time as it is paid in full. This class is unimpaired.

Class 6. Class 6 claims consist of the secured claims of CNH secured by a 280 Case IH Magnum Tractor, a 3330 Patriot Sprayer, a Case IH 7230 Combine, an 8-Row Corn Header, a 30' Grain Header, and an E2 Trail Header Trailer. Subsequent to the initial hearing on plan confirmation, the Debtor and CNH reached an agreement with respect to not only the motion for relief from the automatic stay filed by CNH but its treatment for the life of the Plan. The Debtor and CNH have reached an agreement with respect to treatment of CNH's claims pursuant to an Agreed Order **[DK #276]**, a copy of which is attached, incorporated by reference and marked as **Exhibit "C"**. There was a delay between the time the agreement was reached and the actual implementation of it because the Debtor was unable to achieve confirmation at the point in time he expected to. The agreement is as follows:

On the CNH motion to lift, the Debtor has abandoned the Case IH Magnum and the Case IH Sprayer from the bankruptcy estate and make a one time adequate protection payment in the sum of $18,750.

With respect to treatment of the CNH claim after payment of the adequate protection payment, the Debtor and CNH have agreed that the CNH collateral, described as a Case IH 7230 Combine, a Case IH 3408 8 Row Corn Header, an Unverferth HT30003 header trailer, a Case IH 3020 30' Grain Header, a Wilrich 1403 Soil Preparation and an AMCO FB8-5A Hipper, has a value of $144,400. After giving the Debtor credit for the $18,750 adequate protection payment, the amount of the CNH secured claim to be paid over the life of the Plan is $125,650. This restructured and new secured claim will be amortized over five years at the "Till" rate of 6.75%, to be paid in five annual installments beginning on or before December 31, 2021, through 2025 in the same amount. CNH will have a general unsecured claim for any balances above the amount of its secured claim which will be credited after the resale of the two pieces of surrendered equipment. In light of the restructured and agreed upon new CNH loan, its claim is unimpaired as to the secured portion thereof.

Class 7.1. Class 7.1 claims consist of the secured claims of Community Bank secured by a house and 0.9 acres located on Robinson Road in Carthage, MS. In order to pay the claims in this class, Debtor will "follow" the pre-petition terms and conditions it entered into in connection with this claim with Community Bank by making semiannual payments. However, the Debtor was unable to make a semiannual payment in June of 2020. The Debtor and Community Bank entered into an Agreed Order **[DK #98]**, and an Amendment **[DK #135]** to that Agreed Order, providing for the treatment of the secured claims of Community Bank over the life of the claims in this class. Copies of the Agreed Order and the Amendment are attached, incorporated by reference and marked as **Exhibit "D"**. Accordingly, the repayment terms of the claims in this class are set forth in Exhibit "D", which is incorporated within this class. The claims of Community Bank are not impaired

because it is getting paid in full. Subsequent to the filing of the First Amended Plan, the Debtor has paid Community Bank its three installments due in December of 2020, in the sum of $45,371.93. This includes not only the claims in Class 7.1 and 7.2 (which are semi-annual payments), but also the $30,000 due in Class 7.3. Accordingly, when the $30,000 payment for Class 7.3 is deducted from the $45,371.93 payment, Community Bank's payments in June of each year are $15,371.93, and then in December of each year, Community Bank's payments are $35,371.93.

Class 7.2. Class 7.2 claims consist of the secured claims of Community Bank secured by 200 acres and a shop located at 1640 Hopoca Road in Carthage, MS. In order to pay the claims in this class, Debtor will "follow" the pre-petition terms and conditions it entered into in connection with this claim with Community Bank by making semiannual payments. However, the Debtor was unable to make a semiannual payment in June of this year. The Debtor and Community Bank entered into an Agreed Order **[DK #98]**, and an Amendment **[DK #135]** to that Agreed Order, providing for the treatment of the secured claims of Community Bank over the life of the claims in this class. Copies of the Agreed Order and the Amendment are attached as Exhibit "D". Accordingly, the repayment terms of the claims in this class are set forth in Exhibit "D", which is incorporated within this class. The claims of Community Bank are not impaired because it is getting paid in full. Subsequent to the filing of the First Amended Plan, the Debtor has paid Community Bank its three installments due in December of 2020, in the sum of $45,371.93. This includes not only the claims in Class 7.1 and 7.2 (which are semi-annual payments), but also the $30,000 due in Class 7.3. Accordingly, when the $30,000 payment for Class 7.3 is deducted from the $45,371.93 payment, Community Bank's payments in June of each year are $15,371.93, and then in December of each year, Community Bank's payments are $35,371.93.

Class 7.3. Class 7.3 claims consist of the secured claims of Community Bank secured by a Kuhn SR108 Hay Rake, a Krone 3235 Mower, an E-Z Trail Model 550 Grain Cart, a John Deere 468 Hay Baler, a 9970 John Deere Cotton Picker, a 9960 John Deere Cotton Picker, a New Holland T4.75 Pwerstar with 655 TL Loader, a Krone KW552T Hay Fluffer, a Wilch 1403 Soil Preparation, an AMCO F88-5A Hipper, an Athens Model 1165627651 Disk Harrow 22', a John Deere HX Rotary/Flail Cutter, a Bell 40' Sprayer, and a Case 8 Row 1H 1200 Planters. In order to pay the secured claims of Community Bank secured by the above collateral in this Class 7.3, the Debtor will pay, on December 15, 2020, the sum of $30,000 and thereafter will pay $20,000 in annual installments beginning December 15, 2021, and continuing thereafter until the claims of Community Bank in Class 7.3 are paid in full. The claims of Community Bank are not impaired because it is getting paid in full. Subsequent to the filing of the First Amended Plan, the Debtor has paid Community Bank its three installments due in December of 2020, in the sum of $45,371.93. This includes not only the claims in Class 7.1 and 7.2 (which are semi-annual payments), but also the $30,000 due in Class 7.3. Accordingly, when the $30,000 payment for Class 7.3 is deducted from the $45,371.93 payment, Community Bank's payments in June of each year are $15,371.93, and then in December of each year, Community Bank's payments are $35,371.93. Debtor will pay the claims in this class by paying an annual installment of $20,000 per year beginning in December of 2021.

Class 8. Class 8 claims consist of the secured claims of Ford secured by a 2017 Ford F150. Subsequent to the hearing that was scheduled on the original Plan of Reorganization, Ford and the Debtor entered into an agreement that is evidenced by an Agreed Order **[DK #204]**, a copy of which is attached, incorporated by reference and marked as **Exhibit "E"**. Ford's treatment under this Class 8 is, accordingly, amended to comport with the Agreed Order that is attached as Exhibit

-11-

"E". The loan is not impaired because of the new terms which will be complied with throughout the life of the Plan and beyond and because Ford is getting paid in full. The lien of Ford upon the Ford F150 shall remain unaltered.

Class 9.1. Class 9.1 claims consist of the secured claims of Honda secured by a 2016 Honda Rancher 4x4. Subsequent to the filing of the original Plan of Reorganization, the Debtor and Honda negotiated certain terms and conditions with respect to treatment of the Honda claims. A copy of this Agreed Order [DK #167] is attached, incorporated by reference and marked as **Exhibit "F"**. The loan is not impaired because of the new terms which will be complied with throughout the life of the Plan and beyond and because Honda is getting paid in full. This class is unimpaired.

Class 9.2. Class 9.2 claims consist of the secured claims of Honda secured by a 2016 Honda Foreman. Subsequent to the filing of the original Plan of Reorganization, the Debtor and Honda negotiated certain terms and conditions with respect to treatment of the Honda claims. A copy of this Agreed Order [DK #167] is attached as Exhibit "F". The loan is not impaired because of the new terms which will be complied with throughout the life of the Plan and beyond and because Honda is getting paid in full. This class is unimpaired.

Class 10.1. Class 10.1 claims consist of the secured claims of John Deere secured by a John Deere Vertical Till Disk (evidenced by Proof of Claim No. 16). The secured claims of John Deere in Class 10.1 and 10.2 are cross-collateralized so that the collateral in Class 10.1 is also the collateral for the secured claims of John Deere in Class 10.2 and vice versa. At the hearing scheduled on the original Plan of Reorganization, John Deere and the Debtor agreed that John Deere is adequately secured and so that it will be paid in full over the life of the Plan. In order to provide for the terms for the repayment of the principal claim that will be paid in full, the Debtor agreed to pay $22,587.30 pursuant to the Agreed Order [DK #216] entered into with John Deere, a copy of

which is attached, incorporated by reference and marked as **Exhibit "G"**. The $22,587.30 payment to John Deere that has been made to John Deere was also payment for its claims as provided for in Class 10.2. The treatment of John Deere is as stated in that certain Agreed Order previously resolving the claims of John Deere but with adjustments made because of the passage of time. Accordingly, the claims in Class 10.1 are allowed as fully secured claims in the amount of $28,772.22 (but being reduced by the appropriate "share" of the $22,587.30 payment mentioned above) and payments of $5,865.00 shall be made to John Deere on account of this claim beginning December 31, 2021, and continuing each December 31 thereafter through and including December 31, 2025, at which time the claim shall be paid in full. The loan is not impaired because of the new terms which will be complied with throughout the life of the Plan and beyond and because John Deere is being paid in full. The lien of John Deere upon the Vertical Till Disk shall remain unaltered.

Class 10.2. Class 10.2 claims consist of the secured claims of John Deere secured by a John Deere 6150 Tractor (evidenced by Proof of Claim No. 17). The secured claims of John Deere in Class 10.1 and 10.2 are cross-collateralized so that the collateral in Class 10.1 is also the collateral for the secured claims of John Deere in Class 10.2 and vice versa. At the hearing scheduled on the original Plan of Reorganization, John Deere and the Debtor agreed that John Deere is adequately secured and so that it will be paid in full over the life of the Plan. In order to provide for the terms for the repayment of the principal claim that will be paid in full, the Debtor agreed to pay $22,587.30 pursuant to the Agreed Order **[DK #216]** entered into with John Deere, a copy of which is attached as Exhibit "G". The $22,587.30 payment to John Deere that has been made to John Deere was also payment for its claims as provided for in Class 10.1. The treatment of John Deere is as stated in that certain Agreed Order previously resolving the claims of John Deere but with adjustments made

because of the passage of time. Accordingly, the claims in Class 10.2 are allowed as fully secured claims in the amount of $94,909.92 (but being reduced by the appropriate "share" of the $22,587.30 payment mentioned above) and payments of $16,722.30 shall be made to John Deere on account of this claim beginning December 31, 2021, and continuing each December 31 thereafter through and including December 31, 2025, at which time the claim shall be paid in full. The loan is not impaired because of the new terms which will be complied with throughout the life of the Plan and beyond and because John Deere is being paid in full. The lien upon the 6150 Tractor shall remain unaltered. Any remaining claims of John Deere shall be allowed and classified as general unsecured claims.

Class 11. Class 11 claims consist of the secured claims of Kubota secured by a Lewis Decaker. The Debtor has abandoned the Lewis Decaker to Kubota and its claim has been satisfied in full by the return of that collateral.

Class 12.1. Class 12.1 claims consist of the secured claims of Trustmark secured by 29 head of cattle and a John Deere 6430 Tractor. The 29 head of cattle and the John Deere 6430 Tractor have a value of approximately $45,000, which means that Trustmark is slightly undersecured. Trustmark also has claims in Class 12.2 secured by other collateral. Trustmark appears to be cross-collateralized by, between and among both sets of collateral. However, the Debtor has made a payment of $4,500 to Trustmark, which will reduce the principal debt from $45,000 to $40,500.

In order to pay not only this secured claim of Trustmark, but also the secured claim of Trustmark in Class 12.2, the Debtor will sell (and has sold) certain herd progeny before the end of each year of the Plan and projects to receive a net of about $4,500 from those sales. In the event the net proceeds of those sales total $4,500, that will be the annual payment to Trustmark. In the event annual sales are less than $4,500, the payment will be supplemented by Debtor's other income so

that Trustmark will receive a minimum of $4,500 per year. One-half of the net proceeds of the sale or sales will be applied to the debt in this class and one-half will be applied to the debt in Class 12.2.

This claim is impaired.

Class 12.2. Class 12.2 claims consist of the secured claims of Trustmark secured by a 2007 Ford F350, an 18' BBI Litter Spreader, and a Hopper Bottom. The Ford F350, the BBI Litter Spreader and the Hopper Bottom have a value of approximately $32,000, which means that Trustmark is slightly undersecured. Trustmark also has claims in Class 12.1 secured by other collateral. Trustmark appears to be cross-collateralized by, between and among both sets of collateral.

In order to pay not only this secured claim of Trustmark, but also the secured claim of Trustmark in Class 12.1, the Debtor will sell (and has sold) certain herd progeny before the end of each year of the Plan and projects to receive a net of about $4,500 from those sales. In the event the net proceeds of those sales total $4,500, that will be the annual payment to Trustmark. In the event annual sales are less than $4,500, the payment will be supplemented by Debtor's other income so that Trustmark will receive a minimum of $4,500 per year. One-half of the net proceeds of the sale or sales will be applied to the debt in this class and one-half will be applied to the debt in Class 12.1.

This claim is impaired.

Class 13. Class 13 claims consist of the secured claims of Wells Fargo secured by the Debtor's home and 2.9 acres located at 1640 Hopoca Road in Carthage, MS. Wells Fargo is secured by a first consensual mortgage on the Debtor's home. The Debtor is current with this loan and it is unimpaired. Debtor's spouse has been paying the Wells Fargo loan from her separate account, funded by her income she earns in her employment.

Class 14. The Debtor will pay to Class 14 unsecured creditors a pro rata share of the Debtor's projected disposable income, after payment of costs of operations/administration, priority tax claims, if any, secured claims and sufficient funds to carry the Debtor's operations into crop year 2021 for land preparation, repairs, payment of labor and related costs, together with secured creditor payments due in the early part of 2021. The unsecured creditors will receive pro rata distributions commencing on the Effective Date of Confirmation, over the three year life of the Plan. The first year of the Plan will year 2021, the second year of the Plan will be 2022 and the third year of the Plan will be 2023. Debtor has agreed to paid the sum of $15,000 to the Trustee upon the Effective Date, consistent with the "Payment to Chapter 12 Trustee and Debtor's Attorney" section above. Thereafter, distributions of payments to the Trustee will be made upon the second and third anniversary dates of the Plan in 2022 and 2023.

The Debtor has prepared projections for crop year 2021 with respect to receipts for crop sales and with respect to what those crop sales proceeds will yield. A copy of the cash flow, which is the same cash flow that was attached to the Debtor's borrowing motion that was approved by the Court, is attached, incorporated by reference and marked as **Exhibit "H"**. Crop production expenses and inputs are reflected in the payment to Ag Resource Management ("ARM"), the Debtor's production lender for 2021 and the Debtor's production lender for 2022 and 2023. Absent significant changes in the various government programs that affect the Debtor's farming operation, the Debtor's cash flow for 2021, 2022 and 2023 will simply be repeats of what happens in connection with the 2021 projections. In light of the fact that the Debtor's Plan is a three year plan and 2021 is the first year of it, the succeeding years' cash flows (for the life of the Plan that is) should mirror the cash flow projections for 2021. Additionally, Debtor is waiting for recalculations of monthly principal and

interest payments due from certain secured creditors who received payments in 2020 and 2021 consistent with adequate protection orders.

The Debtor's accountant has projected that he will owe income taxes for crop year 2020 in the sum of approximately $65,000. Those payments must be made when his return is filed which will probably be May of this year. That will significantly reduce the cash remaining from the 2020 crop. In addition, the Debtor will owe the first payment to the Trustee upon confirmation and he has not paid the fees and expenses incurred by Debtor's counsel since this case was filed, some of which will be deducted from the funds on hand. Further, Debtor owes the Community Bank June, 2021, payment that is coming due in the near future.

In addition to the Debtor's income from crop proceeds, he receives, as reflected on his monthly operating reports, a small salary (net of approximately $2,100) from his work as a supervisor in Leake County, Mississippi. In addition, Debtor's spouse, who is employed in the healthcare industry, has earned $4,400 per month as "take home" pay, since the Petition in this case was filed. The Debtor's son will be attending college this fall, in a community college setting and will thereafter, in 2023, attend a four-year public college in Mississippi. Debtor's household expenses, as a result, will increase dramatically, especially in year three of the Plan when his son attends a four-year school.

The Debtor will also receive rental income of $450 per month.

In addition, Debtor will need to "reserve" from each year's crop proceeds, beginning in 2021, and continuing in 2022 and 2023, funds providing for his son's college education, as well as funds to "carry" the Debtor into January and February of the succeeding years prior to the time the Debtor receives his production loan for those years, in order to pay insurance and provide for equipment maintenance. As Debtor's equipment ages, repair costs (which the Debtor usually performs in

January or February after crops are harvested) will only increase. Debtor will also need to reserve a sum for living expenses for January and February in 2022, 2023 and 2024, in addition to the reserves for carrying the farming operation into January and February of 2022, 2023 and 2024. Debtor projects that he will need to reserve $30,000 for farm related expenses/maintenance and $5,000 for living expenses.

Otherwise, the salary of the Debtor's spouse pays for not only the home mortgage, but for her transportation and most of the remaining living expenses incurred by the Kemp family.

### ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtor is not aware of any executory contracts or unexpired leases that need to be assumed. If he discovers executory contracts or unexpired leases that need to be assumed or rejected, the Plan will be amended to provide for that.

### DISCHARGE

Upon completion of all of the Plan payments, the Debtor shall receive his discharge in accordance with 11 U.S.C. § 1228 of the Bankruptcy Code.

### JURISDICTION

After the Effective Date of Confirmation, the Court shall retain jurisdiction only for such purpose as is necessary for the supervision, enforcement, and fulfillment of this Plan; to consider the rejection or acceptances of executory contracts to consider applications for fees and allowances of professional services; to conduct all adversary and civil proceedings which have been filed with or removed to this Court prior to the Effective Date of Confirmation, and to rule upon objections, if any, to claims filed herein.

THIS, the 14th day of April, 2021.

Respectfully submitted,

KEVIN HUDSON KEMP

By His Attorneys,

LAW OFFICES OF CRAIG M. GENO, PLLC

By: _____
Craig M. Geno

OF COUNSEL:

Craig M. Geno; MSB No. 4793
LAW OFFICES OF CRAIG M. GENO, PLLC
587 Highland Colony Parkway
Ridgeland, MS 39157
601-427-0048 - Telephone
601-427-0050 - Facsimile
cmgeno@cmgenolaw.com
N:\Firm Data\Users\Bankrupt\Kemp, Kevin\Plan\Revised2 2nd Amended Plan 4-12-21.wpd

**CERTIFICATE OF SERVICE**

I, Craig M. Geno, do hereby certify that I have caused to be served this date, via electronic filing transmission and/or U. S. Mail, postage prepaid, a true and correct copy of the above and foregoing to the following:

    Harold J. Barkley, Jr., Esq.
    hjb@hbarkley13.com

    Christopher J. Steiskal, Esq.
    christopher.j.steiskal@usdoj.gov

THIS, the 14th day of April, 2021.

_____
Craig M. Geno

-19-